Michael B. Wixom, Esq.
Nevada Bar No. 2812
Katie M. Weber, Esq.
Nevada Bar No. 11376
SMITH LARSEN & WIXOM
Hills Center Business Park
1935 Village Center Circle
Las Vegas, Nevada 89134
Tel: (702) 252-5002
Fax: (702) 252-5006
mbw@slwlaw.com
kw@slwlaw.com
Attorneys for Secured Creditor
Western Alliance Bank

E-Filed: September 9, 2015

SMITH LARSEN & WIXOM
ATTORNEYS
HILLS CENTER BUSINESS PARK
1935 VILLAGE CENTER CIRCLE
LAS VEGAS, NEVADA 89134
TEL (702) 252-5002 • FAX (702) 252-5006

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| In re:<br><br>LIONEL SAWYER & COLLINS, LTD.,<br><br>Debtor. | Case No.: 15-10462-mkn<br>Chapter 7<br><br>Date: September 23, 2015<br>Time: 2:30 p.m. |

## SECURED CREDITOR WESTERN ALLIANCE BANK'S OPPOSITION TO FIRST INTERIM APPLICATION FOR COMPENSATION FOR SCHWARTZER & MCPHERSON LAW FIRM, ATTORNEYS FOR CHAPTER 7 TRUSTEE

Secured Creditor Western Alliance Bank ("WAB"), by and through its counsel, Smith Larsen & Wixom, hereby opposes ("Opposition") the First Interim Application for Compensation (the "Interim Application") for Schwartzer & McPherson Law Firm, Attorneys for Chapter 7 Trustee ("Trustee's Counsel"). As set forth below, WAB objects to any payment to Trustee's Counsel pursuant to the Interim Application using WAB's collateral because the Trustee has failed to plead let alone establish that a special circumstance or undue hardship exists to allow payment of an interim application in this Chapter 7 case.

SMITH LARSEN & WIXOM
ATTORNEYS
HILLS CENTER BUSINESS PARK
1935 VILLAGE CENTER CIRCLE
LAS VEGAS, NEVADA 89134
TEL (702) 252-5002 • FAX (702) 252-5006

Indeed, the payment of interim fees to Trustee's Counsel is absolutely premature and should be rejected due to the uncertainty of collections of WAB's collateral, and presents a likelihood that the Trustee's Counsel will be required to disgorge fees if the Trustee fails to pay WAB in full and similarly situated administrative claims. As such, WAB requests that if any order providing interim allowance is permitted, it explicitly be without prejudice to the right of WAB or any other creditor to seek disgorgement of fees previously paid to Trustee's Counsel if WAB is not paid in full or the Debtor's estate is administratively insolvent.

This Opposition is made and based upon the Memorandum of Points and Authorities set forth below, the papers and pleadings on file herein, and any argument the Court may entertain at the hearing of the Interim Application.

DATED this 9 day of September, 2015:

SMITH LARSEN & WIXOM

Michael B. Wixom, Esq.
Nevada Bar No. 2812
Katie M. Weber, Esq.
Nevada Bar No. 11736
1935 Village Center Circle
Las Vegas, Nevada 89134
Attorneys for Secured Creditor
Western Alliance Bank

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. Introduction and Factual Background.

As the Court is aware, WAB is the holder of a security interest in the accounts receivable (herein, the "Accounts") of Debtor Lionel Sawyer & Collins, Ltd. ("Debtor"). (*See, e.g.*, Declaration of Brian Solomon filed on March 25, 2015, Docket No. 207, at ¶¶ 3-5.) Debtor filed the instant Chapter 7 bankruptcy action on January 30, 2015. (Docket No. 1.)

SMITH LARSEN & WIXOM
ATTORNEYS
HILLS CENTER BUSINESS PARK
1935 VILLAGE CENTER CIRCLE
LAS VEGAS, NEVADA 89134
TEL (702) 252-5002 • FAX (702) 252-5006

On February 9, 2015, Chapter 7 Trustee Yvette Weinstein ("Trustee") file an Ex Parte Application to Employ Counsel under General Retainer Nunc Pro Tunc, which was granted by order entered on February 10, 2015. (Docket Nos. 44 and 46.) Pursuant to the February 10, 2015 Order Granting Trustee's Ex Parte Application to Employ Counsel under General Retainer Nunc Pro Tunc, the Trustee was authorized to employ Trustee's Counsel under a general retainer, *nunc pro tunc* to January 30, 2015, "with the payment of fees subject to review and approval of [the] Court." (Docket No. 46, at p. 2.)

On March 12, 2015, the Trustee filed her first Motion for an Order Authorizing the Use of Cash Collateral on an Interim and Continuing Basis, which motion was granted by Order entered on April 10, 2015. (Docket Nos. 121 and 252.) In that Order, the Trustee was authorized to use WAB's cash collateral in accordance with the budget attached thereto for a period of twelve weeks, beginning on April 1, 2015 and terminating on June 30, 2015. (Docket No. 252.) That budget included estimated legal expenses of $150,000 for the referenced three-month period. (*Id.* at Exhibit 1.) The Order specifically acknowledges that the claims of the Trustee's professionals for fees and costs are subject to a separate application for compensation. (*Id.* at p. 3.)

On May 7, 2015, the Trustee filed her Notice of Continued Hearing Regarding Authorizing the Use of Cash Collateral on a Continuing Basis, which set a hearing on the Trustee's request for authorization to continue to use WAB's cash collateral for an additional 12-week period. (*See* Docket No. 279.) The Court granted this continued motion by Order entered on June 19, 2015. (Docket No. 351.) That Order authorized the Trustee to continue to use WAB's cash collateral from July 1, 2015 through August 31, 2015, in accordance with and subject to the budget attached thereto. (*Id.*) This second budget included estimated legal expenses of $225,000 for the referenced two-month period. (*Id.* at Exhibit 1.) The Order incorporates the terms of the April 10, 2015 Order, including the specific acknowledgement that the claims of the Trustee's professionals for fees and

SMITH LARSEN & WIXOM
ATTORNEYS
HILLS CENTER BUSINESS PARK
1935 VILLAGE CENTER CIRCLE
LAS VEGAS, NEVADA 89134
TEL (702) 252-5002 • FAX (702) 252-5006

costs are subject to a separate application for compensation. (*See id.* at p. 2 and Docket No. 252 at p. 3.)

On July 29, 2015, the Trustee filed a Motion for an Order Authorizing the Use of Cash Collateral for the Period of September 1 through November 30, 2015. (Docket No. 429.) The Court granted this continued motion by Order entered on September 1, 2015; however, such Order is subject to revisiting at the time of hearing the instant Interim Application. (Docket No. 477.) The Order specifically acknowledges that the claims of the Trustee's professionals for fees and costs are subject to a separate application for compensation. (*Id.* at p. 2.)

Trustee's Counsel filed the instant Interim Application on August 21, 2015, which seeks the Court's approval of attorneys' fees in the amount of $402,120.50 and reimbursement of costs in the amount of $9,513.60 for the period of January 30, 2015 through July 31, 2015.

## II. Legal Authorities.

11 U.S.C. § 331 generally gives Courts discretion to grant interim applications for compensation of professionals, subject to reexamination and adjustment during the course of the case. *In re Eckert*, 414 B.R. 404, 409 (Bankr. N.D. Ill. 2009). However, in a Chapter 7 case, there must be a showing of special circumstances - which are generally not present in liquidation cases - before granting an interim application for fees. *In re Car Hauler Specialist, Inc.*, 128 B.R. 325, 327 (Bankr. N.D.N.Y. 1990).

> Basically, interim compensation is peculiar to reorganization cases. As the economy precipitated larger and more complex reorganization cases which required longer periods of administration, the need for some method of compensating court appointed fiduciaries and professionals became more pressing. To assure continued performance on the part of such persons, the court developed the concept of partial payments for services already rendered to be considered and awarded at appropriate stages in the administration of the case.

*Id.* (quoting 2 King, COLLIER ON BANKRUPTCY, (15th ed. 1989) ¶ 331.01). Thus, in a

SMITH LARSEN & WIXOM
ATTORNEYS
HILLS CENTER BUSINESS PARK
1935 VILLAGE CENTER CIRCLE
LAS VEGAS, NEVADA 89134
TEL (702) 252-5002 • FAX (702) 252-5006

Chapter 7 context, absent a showing of special circumstances or undue hardship, Section 331 "should not be invoked simply because the funds which the trustee has on hand appear to be sufficient to pay all priority claims in full." *Id.* Otherwise, the door would be opened to practices within a Chapter 7 action "which are motivated more by the recovery of interim compensation than the expeditious recovery and liquidation of the debtor's assets, the consequent distribution of the proceeds … and the closing of the case." *Id.* at 327-28.; *see also In re Domino Investments, Ltd.*, 82 B.R. 608, 609 (Bankr. S.D. Fla. 1988) (interim compensation extends administration of Chapter 7 estate without benefitting creditors).

To the extent that the assets of the Debtor's chapter 7 estate are insufficient to satisfy WAB's secured claim and all the outstanding chapter 7 administrative expense claims, it will be necessary for the Trustee (as well as other professionals paid on account of administrative expense claims) to disgorge certain amounts paid in order to provide for equality of distribution among secured and administrative creditors. As explained by the court in *In re Channel Master Holdings*, 309 B.R. 855 (Bankr. D. Del 2004), "[a] court has the inherent power to direct disgorgement of fees by any professional and to redistribute those disgorged fees among all professionals in order to assure that none receives more than its pro rata share. *Channel Master Holdings*, 309 B.R. at 860.Further, while courts may grant interim compensation to professionals, they are not required to grant the full amount of an interim fee. *In re Four Star Terminals*, 42 B.R. 419, 439 (Bankr. D. Alaska 1984). Indeed, courts routinely refuse to allow payment of any interim fees where there are no assets which are unencumbered. *See id.* at 440. In any event, because it is difficult to discern prior to the time of a final fee application whether interim fees requested are reasonable, "a limit should be placed on the total amount of interim fees awarded in order to protect … the creditors in Chapter 7 cases, absent a showing by counsel of extraordinary circumstances." *Id.* at 441. "There is indeed a common practice, when dealing with interim

SMITH LARSEN & WIXOM
ATTORNEYS
HILLS CENTER BUSINESS PARK
1935 VILLAGE CENTER CIRCLE
LAS VEGAS, NEVADA 89134
TEL (702) 252-5002 • FAX (702) 252-5006

fees, of holding back the payment of a certain percentage until the ultimate final allowance of fees." *In re Bank of New England Corp.*, 134 B.R. 450, 458-59 (Bankr. D. Mass. 1991). The average holdback is twenty-five percent. *Id.* at 459; *see also Four Star Terminals*, 42 B.R. at 440.

To the extent an applicant for interim compensation has made a showing of special circumstances in a Chapter 7 action, such applicant must further meet the requirements of 11 U.S.C. § 330. Section 330(a)(1) provides that after notice and a hearing, the court may award to a professional person employed under § 327 "reasonable compensation for actual, necessary services rendered" by such professional person. 11 U.S.C. § 330(a)(1). Sections 330(a)(3)(A) - (F) provide that in determining the amount of reasonable compensation to be awarded, the Court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including the time spent on such services; the rates charged for such services; whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title; whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under the Bankruptcy Code. Section 330(a)(4)(A) provides that the court shall not allow compensation for unnecessary duplication of services; or services that were not reasonably likely to benefit the Debtor's estate; or necessary to the administration of the case.

A professional seeking an order authorizing compensation must provide a "detailed statement of (1) the services rendered, time expended and expenses incurred, and (2) the amounts requested." Fed. R. Bankr. P. 2016(a). Professional fees may not be awarded unless and until the applicant shows that the services provided were reasonably likely to benefit the estate. *See In*

*re Mednet, MPC Corp.*, 251 B.R. 103, 108 (9th Cir. BAP 2000). "In every case, a court should award fees only to the level proven to be actual, necessary and reasonable." *In re CIC Investment Corp.*, 192 B.R. 549 (9th Cir. BAP 1996).

The applicant bears the burden of proving an entitlement to fees. *See, e.g., In re Las Vegas Monorail Co.*, 458 B.R. 553, 556-57 (Bankr. D. Nev. 2011). Bankruptcy courts have an independent duty to review fee applications, regardless of whether any party in interest objects. *In re Auto Parts Club, Inc.*, 211 B.R. 29, 33 (9th Cir. BAP 1997). If an applicant fails to sustain its burden on reasonableness, a court may properly deny the application for compensation. *See id.* Similarly, a court may reduce a professional's fees or expenses when they are disproportionate to the benefit to the estate. *See id.* at 34. Applicants must supply sufficient information to enable proper analysis of the services rendered as required by Fed. R. Bankr. P. 2016(a), which requires that an entity seeking compensation for services rendered set forth a detailed statement of the services rendered, time expended and expenses incurred to allow the determination of whether the services were actual and necessary. *See, e.g., In re Busy Beaver Bldg. Centers., Inc.*, 19 F. 3d 833, 845 (3d Cir. 1994); *Matter of Meade Land & Dev. Co.*, 577 F.2d 858, 859 (3d Cir. 1978). In particular, applications that fail to identify, set forth or itemize certain tasks or services may not be awarded compensation. *See In re Poseidon Pools of America, Inc.*, 180 B.R. 718, 730-31 (Bankr. E.D.N.Y. 1995) (An applicant should sufficiently identify and itemize services, else it would be difficult if not impossible for the Court to determine the reasonableness of each task or service).

Section 330 authorizes a bankruptcy court to award retained professionals "reasonable compensation for actual, necessary services" based on various factors, including the time spent, the rate charged and the reasonableness of the attorney's rate compared to that charged by comparably skilled practitioners in non-bankruptcy cases. In the Ninth Circuit, "the customary method for assessing an attorney's fee application … is the 'lodestar,' under which 'the number of

SMITH LARSEN & WIXOM
ATTORNEYS
HILLS CENTER BUSINESS PARK
1935 VILLAGE CENTER CIRCLE
LAS VEGAS, NEVADA 89134
TEL (702) 252-5002 • FAX (702) 252-5006

hours reasonably expended' is multiplied by 'a reasonable hourly rate' for the person providing the services." *In re Eliapo*, 468 F.3d 592, 598 (9th Cir. 2006)

Another factor in the Section 330 analysis is whether time spent on tasks may be duplicative or excessive. 11 U.S.C. § 330(a)(4)(A)(i). The applicant should sufficiently identify and itemize its services so a determination of the reasonableness of each task may be achieved. *In re The Bennet Funding Group, Inc.*, 213 B.R. 234, 244 (Bankr. N.D.N.Y. 1997).

In order to enable the Court to determine whether a professional's time spent on a task is reasonable, time entries must be specific, and the records must clearly identify each discrete task billed. *See In re Baker*, 374 B.R. 489, 495 (Bankr. E.D.N.Y. 2007) ("The records must be detailed enough to enable a Court to determine whether the attorneys are claiming compensation for hours that are 'redundant, excessive, or otherwise unnecessary.'"); *see also In re Bennett Funding Group*, 213 B.R. 234, 244 (Bankr. N.D.N.Y. 1997) ("In cases where the time entry is too vague or insufficient to allow for a fair evaluation of the work done and the reasonableness and necessity for such work, the court should disallow compensation for such services."). Vague entries "make a fair evaluation of the work done and the reasonableness and necessity for the work extremely difficult, if not impossible." *In re Hudson*, 364 B.R. 875, 880 (Bankr. N.D.N.Y. 2007).

Recording multiple tasks as one billing entry (typically referred to as "block billing" or "lumping") is routinely disallowed as it makes it exceedingly difficult to determine the reasonableness of the time spent on each of the individual tasks performed. *See Baker*, 374 B.R. at 394-95. References to telephone calls that do not make clear who the call was with or the subject matter discussed, preparation of memoranda of law that do not indicate the legal issues involved, email communications without a description of the substance of the communications and the recipients of such communications, and the review of documents without providing a description of the document reviewed are all examples of vague time entries that make a fair



SMITH LARSEN & WIXOM
ATTORNEYS
HILLS CENTER BUSINESS PARK
1935 VILLAGE CENTER CIRCLE
LAS VEGAS, NEVADA 89134
TEL (702) 252-5002 • FAX (702) 252-5006

SMITH LARSEN & WIXOM
ATTORNEYS
HILLS CENTER BUSINESS PARK
1935 VILLAGE CENTER CIRCLE
LAS VEGAS, NEVADA 89134
TEL (702) 252-5002 • FAX (702) 252-5006

evaluation of the work done and its reasonableness impossible. *See Hudson*, 364 B.R. at 880; *In re CCT Communications, Inc.*, Case No. 07-10210 (SMB), 2010 WL 3386947, at *7 (Bankr. S.D.N.Y. August 24, 2010) (disallowing time entries referring to telephone calls and emails without identifying the subject matter of the call or email, referring to preparation of draft letters without identifying the subject matter, and referring to vague description such as "work on fee application" or "attention to Vlahos's request"); *In re Fibermark, Inc.*, 349 B.R. 385, 396–97 (Bankr. D. Vt. 2006). As a result of "lumping" time, the "timekeeper fails to sustain [his] burden of providing that [his] fees are reasonable." *In re Brous*, 370 B.R. 563, 576 (Bankr. S.D.N.Y. 2007). Consequently, courts summarily will disallow time for discrete legal services merged together in a fee application. *See, e.g.*, *Baker*, 374 B.R. at 496 (deducting 20% from the requested fees for improper block billing). Courts must determine whether an applicant has provided: a description of services provided, setting forth, at a minimum, the parties involved and the nature and purpose of each task; the date the service was provided, the amount of time spent performing the task, and the amount of fees requested for each task. *In re Berg*, 268 B.R. 250, 258 (Bankr. D. Montana 2001).

## II. Argument.

WAB generally objects to the Interim Application as it seeks payment of the Trustee's legal fees, out of WAB's cash collateral, prior to any distribution to creditors. Courts routinely refuse to grant interim fee applications where there are no unencumbered assets available for payment of the fees. *See Four Star Terminals*, 42 B.R. at 440 (collecting cases). Likewise, it is appropriate to deny an interim fee application where there will be insufficient assets in the estate to pay all administrative expenses. *See id.* (*citing In re Western Farmers Assoc.*, 13 B.R. 132 (Bkrtcy. W.D. Wash. 1981). Here, the Debtor's primary (and possibly sole) asset is its accounts receivable – *i.e.*, WAB's collateral. Whether there is any equity in these accounts available for

SMITH LARSEN & WIXOM
ATTORNEYS
HILLS CENTER BUSINESS PARK
1935 VILLAGE CENTER CIRCLE
LAS VEGAS, NEVADA 89134
TEL (702) 252-5002 • FAX (702) 252-5006

the payment of fees or administrative expenses is undetermined at this time, because the actual value of the accounts cannot be evaluated until collection of the accounts is complete. (*See, e.g.*, Order on Motion for Relief from Automatic Stay, Docket No. 466, at p. 11.) Given the likelihood that there will be insufficient assets in the estate to pay fees or administrative expenses, it would be premature at this juncture to award interim fees.

Even based on the Trustee's estimated value of the accounts, the alleged equity margin is far too narrow to award fees on an interim basis. This Court accepted Larry Bertsch's estimated value of the accounts as of June 15, 2015 at $3,063,837. (*Id.*) Subtracting the amount of WAB's secured claim ($2,808,209.22) from this amount leaves an alleged equity cushion of only $255,627.78. (*See* Amended Proof of Claim 38.) Yet, by way of the instant Interim Application, Trustee's Counsel is seeking compensation and expenses in the total amount of $411,634.10 – more than $150,000 over the amount of alleged equity available. Given that the Trustee continues to incur attorneys' fees and costs, the alleged equity will continue to erode even further as the administration of the case continues. Accordingly, it is clear that the only asset out of which Trustee's Counsel's fees are likely to be paid is encumbered by WAB's security interest. Under the circumstances, WAB respectfully submits that this is an appropriate case for denial of payment of interim fees. *See Four Star Terminals*, 42 B.R. at 440.

Moreover, Trustee's Counsel has made no attempt to demonstrate any special circumstances justifying interim compensation in this Chapter 7 case. Indeed, a review of the Interim Application reveals that Trustee's Counsel has not provided any authority whatsoever in support of an award of interim compensation. (*See generally* Interim Application.) Instead, Trustee's Counsel cites only to 11 U.S.C. §§ 328 and 330. (*Id.* at pp. 6-7.) These statutes merely govern the award of compensation to officers and professionals generally, and do not provide for the interim compensation sought here. As noted by the Court in the *Car Hauler* case, awarding

SMITH LARSEN & WIXOM
ATTORNEYS
HILLS CENTER BUSINESS PARK
1935 VILLAGE CENTER CIRCLE
LAS VEGAS, NEVADA 89134
TEL (702) 252-5002 • FAX (702) 252-5006

interim compensation without a showing of special circumstances or undue hardship would merely open the door for practices "motivated more by the recovery of interim compensation than the expeditious recovery and liquidation of the debtor's assets, the consequent distribution of the proceeds ... and the closing of the case." *Car Hauler Specialist, Inc.*, 128 B.R. at 327-28. Yet, the Trustee has failed to even attempt to provide the Court with any showing of special circumstances or undue hardship. Therefore, granting the Interim Application would merely extend administration of the case without any benefit to creditors. *See Domino Investments, Ltd.*, 82 B.R. at 609. Accordingly, WAB respectfully submits that the Interim Application should be summarily denied in its entirety.

Nevertheless, to the extent the Court is inclined to grant the Interim Application, WAB respectfully submits that the fees requested must be significantly reduced in accordance with Section 330.

First, it is clear that the fees sought by Trustee's Counsel are not reasonable, as required under Section 330. For a six-month period (January 30, 2015 – July 31, 2015), Trustee's Counsel seeks compensation in the amount of $402,120.50, averaging out to approximately $67,000 per month. As WAB has pointed out in prior pleadings, in order to incur $67,000 per month in legal fees, an attorney charging a rate of $400 per hour would have to work <u>more than a full 40 hours per week</u> on this matter alone (*i.e.*, $400 x 40 hours x 4 weeks = $64,000.00). WAB respectfully submits that such fees are inherently unreasonable. The unreasonableness of the fees requested is further underscored when viewed in light of the amounts collected by the Trustee (or, more correctly, as noted below, her counsel). As of August 11, 2015, the Trustee's "Form 2" shows net accounts receivable receipts in the amount of $792,577.87. (*See* Exhibit A, to be filed under seal.) As noted, by way of the Interim Application, Trustee's Counsel seeks compensation in the amount of $402,120.50 – more than half of the total amount that has been collected. Again, WAB

SMITH LARSEN & WIXOM
ATTORNEYS
HILLS CENTER BUSINESS PARK
1935 VILLAGE CENTER CIRCLE
LAS VEGAS, NEVADA 89134
TEL (702) 252-5002 • FAX (702) 252-5006

respectfully submits that such fees are inherently unreasonable under the circumstances.

Second, the billing statements supporting the Interim Application contain a number of entries for time spent on services which are not legal in nature, which could have been completed by non-billing support staff or, indeed, the Trustee herself. As stated by one court:

> an attorney for the trustee generally would be limited to representing the trustee in contested matters, adversary proceedings, specialized matters involving legal analysis or court attendance, and the preparation of most pleadings. [Citation omitted.] To that end, a court must be mindful that trustee duties are in fact performed by the trustee and not by the trustee's attorney.

*In re Columbia Plastics, Inc.*, 251 B.R. 580, 586 (Bankr. W.D. Wash. 2000).

In the *Columbia Plastics* case, the Court found that the trustee's attorney had billed the bankruptcy estate for time expended in performing trustee's duties, including working on payroll and tax matters, reviewing schedules, preparing for and attending the Section 341 meeting, answering general questions from creditors and employees, and, notably, collecting outstanding accounts receivable. *See id.* As aptly stated by the Court:

> At the commencement of a case, it is incumbent upon the trustee and the trustee's attorney to set procedures whereby trustee duties are performed by the trustee, and not the attorney, so that each is performing the job that he or she was appointed to perform. For example, at the start of a case, the trustee should implement a system whereby routine calls from creditors, employees, and other parties seeking information should be routed through the trustee, not the attorney. The trustee is generally expected to perform the preparatory work to collect receivables, analyze preferences, hire professionals, liquidate assets, and answer inquiries from creditors, employees, and professionals related to the administration of the estate.

*Id.*

In the instant case, both prior testimony of the Trustee, and the billing statements submitted in support of the instant Interim Application, demonstrate that the Trustee's Counsel has undertaken multiple tasks which should have properly been completed by the Trustee. Most

SMITH LARSEN & WIXOM
ATTORNEYS
HILLS CENTER BUSINESS PARK
1935 VILLAGE CENTER CIRCLE
LAS VEGAS, NEVADA 89134
TEL (702) 252-5002 • FAX (702) 252-5006

notably, it appears Trustee's Counsel has been primarily responsible for collecting the accounts receivable of the Debtor – an unnecessary and inefficient process which has and continues to deplete the value of the accounts. Attached hereto as Exhibit B is a chart outlining, describing, and identifying time entries which constitute duties which should have been completed by the Trustee, not her attorneys.

Third, the billing statements submitted in support of the Interim Application include a number of impermissibly "vague" or "lumped" time entries. Attached hereto as Exhibit C is a chart outlining, describing, and identifying time entries that are impermissibly vague, in that it cannot be determined what task was being performed, and thus whether the service was necessary within the meaning of Section 330. Additionally, attached hereto as Exhibit D is a chart outlining, describing, and identifying time entries that are impermissibly "lumped" together, describing two or more tasks without designating the time performed on each individual task, rending an assessment as to the reasonableness of the services difficult or impossible.

Fourth, certain of the time entries identify references to internal meetings or memoranda within Trustee's Counsel's firm. However, these time entries are not sufficiently descriptive to permit a meaningful determination as to whether the professionals involved are seeking compensation for services that may be redundant, excessive, or otherwise unnecessary. Additionally, these meetings may result in time spent on tasks that may have been duplicative or excessive. When more than one professional is working on a case in the same capacity as another, the likelihood of duplication of effort increases. Professionals representing the same client who each bill separately for identical services should have their compensation reduced to correct for excessive or duplicative hours. Attached hereto as Exhibit E is a chart identifying those time entries which refer to internal conferences or memoranda involving more than one professional.

SMITH LARSEN & WIXOM
ATTORNEYS
HILLS CENTER BUSINESS PARK
1935 VILLAGE CENTER CIRCLE
LAS VEGAS, NEVADA 89134
TEL (702) 252-5002 • FAX (702) 252-5006

Fifth, there are a number of billing discrepancies where a timekeeper has "lumped" different tasks together, assigning each task a time frame, but the total time charged for the entry is more than the total time expended on each individual task. For example, on July 30, 2015, there is a block time entry by timekeeper JAI in the total amount of 3.90 hours; however, the time for each task listed therein totals only 3.40 hours. Attached hereto as Exhibit F is a summary of such inconsistent time entries.

Sixth, Trustee's Counsel seeks compensation for the attendance of multiple professionals at a number of hearings, meetings, and/or teleconferences. While WAB acknowledges that this case has presented some complex issues, the need for multiple professionals attending these hearings or meetings is not evident. A chart summarizing these time entries involving multiple professionals at a given hearing or meeting is attached hereto as Exhibit G.

Finally, there appear to be a number of duplicate entries in the billing records submitted, as described in the chart attached hereto as Exhibit H.

To the extent the Court is inclined to grant the Interim Application, WAB respectfully submits that the fees requested must be significantly reduced in accordance with those time entries described in Exhibits B through H.

With respect to the costs sought by Trustee's Counsel, there are a number of entries which appear to be excessive. For example, Trustee's Counsel requests reimbursement for $2,108 in photocopies at $0.25 per page – *i.e.*, 8,431 copies. It is unclear why such a large number of photocopies have been made in this matter, particularly when WAB's counsel was ordered to prepare exhibit books for both the Court and Trustee's Counsel in connection with the evidentiary hearing on July 20, 2015. Additionally, it appears Trustee's Counsel is seeking reimbursement for a number of costs which should have been incurred by the Trustee, not her counsel. Specifically, costs for mailing labels, external hard drives, bolt cutters, keys, tags, padlocks, and,

SMITH LARSEN & WIXOM
ATTORNEYS
HILLS CENTER BUSINESS PARK
1935 VILLAGE CENTER CIRCLE
LAS VEGAS, NEVADA 89134
TEL (702) 252-5002 • FAX (702) 252-5006

undoubtedly, a large portion of the $1,164.17 sought in postage fees, relate to tasks of a non-legal nature which could, and should, have been completed by the Trustee. Thus, to the extent reimbursement of these costs is allowed by the Court, WAB respectfully requests that the costs should be reduced to account for expenses which are excessive, and expressly reserves its right to object to reimbursement of the same or similar costs that may be requested by the Trustee in any future filings.

## III. Conclusion.

For all of the foregoing reasons, WAB respectfully requests that the Interim Application be denied in its entirety, or, to the extent the Court is inclined to grant the same, explicitly reserve the rights of WAB or any party in interest to seek to disgorge compensation in order to ensure that WAB is paid in full and all Chapter 7 administrative expense claimants receive an equal *pro rata* recovery, and that the fees be significantly reduced in accordance with the exhibits attached hereto.

DATED this 9 day of September, 2015:

SMITH LARSEN & WIXOM

Michael B. Wixom, Esq.
Nevada Bar No. 2812
Katie M. Weber, Esq.
Nevada Bar No. 11736
1935 Village Center Circle
Las Vegas, Nevada 89134
Attorneys for Secured Creditor
Western Alliance Bank