Jeanette E. McPherson, Esq., NV Bar No. 5423
Jason A. Imes, Esq., NV Bar No. 7030
Schwartzer & McPherson Law Firm
2850 South Jones Blvd., Suite 1
Las Vegas NV 89146-5308
Telephone: (702) 228-7590
Facsimile: (702) 892-0122
E-Mail: bkfilings@s-mlaw.com

*Attorneys for Yvette Weinstein, Trustee*

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| In re:<br><br>LIONEL SAWYER & COLLINS, LTD.,<br><br>Debtor. | Case No. BK-S-15-10462-MKN<br><br>Chapter 7<br><br>**AMENDED MOTION TO EMPLOY PIERCY BOWLER TAYLOR & KERN, *NUNC PRO TUNC***<br><br>**Date: OST Pending**<br>**Time: OST Pending** |

Yvette Weinstein, Chapter 7 Trustee (the "Trustee") for the bankruptcy estate of Lionel Sawyer & Collins, Ltd. (the "Debtor" or "LSC") hereby files this Amended Motion To Employ Piercy Bowler Taylor & Kern, *Nunc Pro Tunc* ("Motion) to employ Piercy Bowler Taylor & Kern ("PBT&K") to provide: 1) tax preparation services, including without limitation, the preparation and filing of the Debtor's tax return for the year 2014, and 2) services for the Lionel Sawyer & Collins, Ltd. Profit Sharing Plan in connection with its annual reporting requirements under the Employee Retirement Income Security Act of 1974 and related regulations for the years 2014 and 2015, *nunc pro tunc* to September 14, 2015.

This Motion is made and based upon 11 U.S.C. § 327(a), Fed.R.Bankr. P. 2014(a), the Points And Authorities set forth herein, the Amended Declaration of James Wilcox In Support Of Amended Motion To Employ Piercy Bowler Taylor & Kern, *Nunc Pro Tunc* ("Wilcox Declaration"), the Amended Declaration of Kelly Parker In Support Of Amended Motion To Employ Piercy Bowler Taylor & Kern, *Nunc Pro Tunc* ("Parker Declaration"), the pleadings on file, and any argument entertained at the time of the hearing on this matter.

## POINTS AND AUTHORITIES

### Facts

1. On January 30, 2015, Lionel Sawyer & Collins, Ltd., the Debtor, filed a petition for relief under Chapter 7 of the Bankruptcy Code.

2. Yvette Weinstein, the Trustee, was the duly appointed and is the acting Chapter 7 trustee.

### Jurisdiction and Venue

3. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1134. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

4. The statutory basis for the relief sought herein is Sections 327 and 328 of the Bankruptcy Code, and Fed.R.Bankr. P. 2014.

5. Venue of the Debtor's chapter 7 case in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1408.

### Memorandum of Law

**A. Retention**

6. On or around September 14, 2015, the Trustee entered into engagement agreements with PBT&K for PBT&K to provide: 1) tax preparation services, including without limitation, the preparation and filing of the Debtor's tax return for the year 2014, and 2) services for the Lionel Sawyer & Collins, Ltd. Profit Sharing Plan in connection with its annual reporting requirements under the Employee Retirement Income Security Act of 1974 ("ERISA") and related regulations ("ERISA Annual Reporting") for the years 2014 and 2015. True and correct copies of the engagement letters with PBT&K (the "Engagement Letters") are attached as Exhibit "1" to the Declaration of James Wilcox (the "Wilcox Declaration") and Declaration of Kelly Parker (the "Parker Declaration").

7. The Trustee has selected PBT&K because it has substantial audit, tax, and consulting service experience and is well-qualified to provide tax services and services related to reporting requirements under ERISA to the estate. See representative curricula vitae attached to this Motion as **Exhibit "1."** In addition, as set forth below, prepetition, PBT&K performed

financial review, tax reporting, audit, and ERISA Annual Reporting services for the Debtor, and therefore, has substantial familiarity and knowledge pertaining to the Debtor's tax matters and matters relating to reporting requirements for the Lionel Sawyer & Collins, Ltd. Profit Sharing Plan.

8. PBT&K has material connections to the Debtor and related parties as it has provided the following services to the Debtor commencing as early as 1996:

- Annual reviews[1] of the financial statements of LSC beginning with December 31, 1995 and the year then ended through December 31, 2013 and the year ended, except for December 31, 2005, 2004 and 2001, which were audited.
- Annual audits of the LSC Profit Sharing Plan beginning with December 31, 1995 and the year then ended through December 31, 2013 and the year ended.
- Annual federal and state (if applicable) corporate tax return preparation of LSC beginning with 1995 through 2013.
- Annual Form 5500 employee benefit tax return preparation of the LSC welfare benefit plan beginning with 1995 through 2013.

PBT&K notes that the annual audits were performed in accordance with auditing standards generally accepted in the United States which standards mandate independence. As a result of these standards and requirements, PBT&K has maintained its independence with respect to LSC's financial records and the LSC Profit Sharing Plan. In addition, as part of its audit services, PBT&K only tested contributions to the LSC Profit Sharing Plan, meaning that it only tested contributions based upon the information provided by the Debtor and did not obtain, create, or calculate the figures used for this testing. PBT&K did not perform initial calculations of employee payroll, employee deferrals, or any LSC contributions to the plan.

9. In addition, PBT&K has provided accounting and related services to former shareholders of the Debtor, some of whom are paying PBT&K to provide services to the Trustee as set forth herein. <u>See</u> Wilcox Declaration and Parker Declaration. The shareholders who are paying PBT&K for these services are as follows:

---

[1] To be clear, an "audit" provides a high, but not absolute, level of assurance about whether the financial statements are free of material misstatement; and a "review" provides limited assurance that there are no material modifications that should be made to the financial statements.

Elizabeth Brickfield
Richard H. Bryan*
Leslie Bryan-Hart*
Linda M. Bullen*
Mark A. Clayton*
Max D. Couvillier
John E. Dawson
Colleen A. Dolan*
Craig E. Etem*
J. Erin Flynn
David N. Frederick
Lynn S. Fulstone
Pearl L. Gallagher
Jennifer J. Gaynor
Gregory R. Gemignani*
Mark H. Goldstein
Laura K. Granier
Kevin J. Hejmanowski
Paul R. Hejmanowski*
Rodney M. Jean*
Todd E. Kennedy*
Malani L. Kotchka*
Paul E. Larsen
Samuel S. Lionel*
Christopher Mathews
A. William Maupin
Charles H. McCrea Jr.
Dan C. McGuire
William J. McKean
John M. Naylor
Matthew R. Policastro
Dan R. Reaser
Rory J. Reid*
Jennifer Roberts
Gregory E. Smith*
Jennifer A. Smith
Doreen Spears-Hartwell
Laura J. Thalacker
Todd M. Touton*
Christopher R. Walther
Matt E. Watson
Allen J. Wilt
Jeffrey P. Zucker*

---

* PBT&K is engaged to prepare personal tax returns for these people.

In addition, PBT&K is also assisting the law firm, Hejmanowski & McCrea, with their accounting and tax needs.

These shareholders have paid Piercy Bowler in a good faith belief that there are Federal statutes effectively requiring that former shareholders of corporations, former trustees of plans, etc. assume responsibility for certain tax returns being filed. People have paid for accounting services in a good faith belief that they are discharging the duty imposed upon them by Federal law. Discharging this duty imposed by Federal law, should not create a conflict with the interest of the bankruptcy estate who also has the same duty.

10. PBT&K has also provided services to other debtors and trustee's in other bankruptcy cases, including matters in which Schwartzer & McPherson Law Firm was counsel. In addition, PBT&K may have served as accountants in other matters that involved counsel who represent parties in this case.

11. PBT&K was listed as a creditor on the Debtor's bankruptcy petition. However,

PBT&K is not a creditor as it wrote off all unpaid amounts owed by LSC to PBT&K, and did not file a proof of claim in this bankruptcy case.

12. PBT&K anticipates that it will provide to the Trustee, accounting and related services, including 1) the preparation and filing of the Debtor's tax return for the year 2014, and 2) the preparation and filing of the required annual reports under the Employee Retirement Income Security Act of 1974 and related regulations for the Lionel Sawyer & Collins, Ltd. Profit Sharing Plan for the years 2014 and 2015. See Engagement Letters. It is necessary for the Trustee to employ PBT&K to provide these services because the tax returns and annual reports must be filed to comply with applicable law and to avoid substantial, potential penalties.

**B. <u>Professional Compensation</u>**

13. The Trustee proposes that the compensation for the services of PBT&K be paid on a flat fee basis consistent with the terms and conditions of the Engagement Letters. Specifically, PBT&K has agreed that it will be paid the sum of $10,000 for the preparation and filing of the Debtor's tax return for the year 2014 and will be paid the sum of $22,500.00 for the services rendered in connection with the annual reporting requirements under the Employee Retirement Income Security Act of 1974 and related regulations for the Lionel Sawyer & Collins, Ltd. Profit Sharing Plan for the years 2014 ($15,000.00) and 2015 ($7,500.00). <u>See</u> Wilcox Declaration and Parker Declaration.

14. Due to the lack of funds in this bankruptcy estate to pay PBT&K for the services required to be performed, former shareholders have agreed to pay PBT&K for the services that PBT&K will provide to the Trustee. These shareholders are not seeking reimbursement from the Trustee or the estate. The list of shareholders who are contributing to the payment of PBT&K are set forth in paragraph 9 above. <u>See</u> Wilcox Declaration. PBT&K also provides accounting and related services to some of these shareholders as set forth in paragraph 9 above. <u>See</u> Wilcox Declaration. PBT&K has been informed that some of these shareholders have filed proofs of claim in this case. However, PBT&K has not been involved with these claims, and as accountants, PBT&K does not represent these shareholders in connection with this bankruptcy case or their claims in this estate. <u>See</u> Wilcox Declaration and Parker Declaration.

15. PBT&K has agreed that all of its fees and costs shall be paid solely by the former shareholders of the Debtor pursuant to an agreement PBT&K has reached with these shareholders and as set forth herein, and that no monies shall be paid by the Trustee or the bankruptcy estate to PBT&K for such services. See Wilcox Declaration and Parker Declaration.

**C. PBT&K Has No Adverse Interest And Is Disinterested**

16. 11 U.S.C. § 327 provides that "the trustee, with the court's approval, may employ one or more . . . accountants, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title." Thus, there is essentially a two-pronged standard under § 327. First, the professional must not hold or represent an adverse interest to the estate. Second, the professional must be disinterested.

17. The Bankruptcy Code does not define "adverse interest." However, courts have held that the key inquiries are whether the professional, for instance, a) has a "meaningful incentive to act contrary to the best interests of the estate and its sundry creditors", In re Martin, 817 F.2d 175, 180 (1st Cir. 1987); b) possesses or asserts any economic interest that would lessen the value of the bankruptcy estate or would create either an actual or potential dispute with the estate as a rival claimant, In re Roberts, 46 B.R. 815, 827 (Bankr. D. Utah 1985), or c) has "another interest [that] may cause the professional to act differently than they would without that other interest . . . ." In re Worldcom, Inc., 311 B.R.151, 163 (Bankr. S.D.N.Y. 2004).

18. PBT&K does not hold an "adverse interest" to the estate. PBT&K does not hold or represent any interest that would impair PBT&K's ability to objectively perform the services contemplated herein. First, it has no incentive to act contrary to the estate's interests or its creditors. The Trustee seeks to hire PBT&K for the services set forth herein which, in accordance with GAAP standards and applicable law, require PBT&K to act independently. Further, with regard to the ERISA Reporting Requirements, PBT&K only tested contributions to the LSC Profit Sharing Plan as part of its audit services. PBT&K did not perform initial calculations of employee payroll, employee deferrals, or any LSC contributions to the plan, so it is not auditing its own work.

In addition, PBT&K does not possess or assert an economic interest that would lessen the value of the estate or create an actual dispute with the estate as it does not hold any claims against the estate. In fact, the Trustee seeks to hire PBT&K so that there are no adverse economic affects to the estate arising from the failure to comply with the ERISA Annual Reporting or to file the 2014 tax return. Further, the compensation by the Debtor's shareholders to PBT&K does not cause PBT&K to hold an "adverse interest" to the estate as it does not cause PBT&K to act differently towards the estate or cause it to choose between conflicting interests, its own and that of the Trustee. See In re WPMK, Inc., 42 B.R. 157 (Bankr. D.Hawai'i 1984). PBT&K is not in a position where it must choose between conflicting interests because not only must it act independently to provide services in accordance with governing standards, GAAP and the law, the interests of the estate and the shareholders are consistent with regard to the services to be performed by PBT&K, an independent accountant. The estate and shareholders have a common interest in having the required documents filed so that obligations are met and penalties against the estate are not imposed.

19. The term "disinterested person" is defined in 11 U.S.C. § 101(14) as follows:

> (A) is not a creditor, an equity security holder, or an insider;
> (B) is not and was not, within 2 years before the date of the filing of the petition, a director, officer, or employee of the debtor; and
> (C) does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason.

PBT&K and its professionals are disinterested within the meaning of Section 101(14) of the Bankruptcy Code as set forth below. See Wilcox Declaration and Parker Declaration.

20. First, PBT&K, its shareholders, and associates are not creditors, equity security holders, or insiders of the Debtor. 11 U.S.C. § 101(14)(A). The Trustee notes that PBT&K was listed as a creditor on the Debtor's bankruptcy petition. However, PBT&K is not a creditor as it wrote off all unpaid amounts owed by LSC to PBT&K, and did not file a proof of claim in this bankruptcy case. See Wilcox Declaration and Parker Declaration.

21. Second, PBT&K, its shareholders, and associates are not and were not, within two years before the date of this application, directors, officers, or employees of Debtor. 11 U.S.C. §

101(14)(B). See Wilcox Declaration and Parker Declaration.

22. Third, as previously set forth herein, PBT&K and its professionals do not have an adverse interest to the estate, let alone one that is materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason. 11 U.S.C. § 101(14)(C). As previously set forth herein, PBT&K and its professionals have had and do have current or prior material connections to the Debtor, its creditors, the Trustee, their respective attorneys and accountants, or related parties in that it has provided services to the Debtor and its shareholders. However, these connections do not cause there to be a materially adverse interest to the estate or of any class of creditors or equity security holders. In connection with providing services to the Debtor, PBT&K is required to provide an independent review of the Debtor's financial information to comply with GAAP standards and applicable law. In addition, with respect to the ERISA Annual Reporting, PBT&K did not generate the figures used for the Profit Sharing Plan, but simply provided the testing services for compliance. See Wilcox Declaration and Parker Declaration. Thus, the services to be rendered by PBT&K to the Trustee are not ones that are being rendered in an effort to protect the integrity of its prior services to the Debtor. See In re Statewide Pools, Inc., 79 B.R. 312 (Bankr. S.D.Ohio 1987).

23. PBT&K does not have any present or prior connection with the United States Trustee, any persons employed in the Office of the United States Trustee, or any judge of the United States Bankruptcy Court for the District of Nevada in this case. See Wilcox Declaration and Parker Declaration.

24. Finally, PBT&K does not hold or represent any interest that would impair PBT&K's ability to objectively perform the services contemplated herein. See Wilcox Declaration and Parker Declaration.

///

///

///

///

**Conclusion**

WHEREFORE, Trustee respectfully requests authorization to employ Piercy Bowler Taylor & Kern, *nunc pro tunc* to September 14, 2015, with compensation and reimbursement of expenses to be paid solely by former shareholders of the Debtor, and for such other and further relief to the Trustee as the Court may deem proper.

DATED: September 24, 2015.

/s/ Jeanette E. McPherson
Jeanette E. McPherson, Esq.
Schwartzer & McPherson Law Firm
2850 South Jones Blvd., Suite 1
Las Vegas NV 89146
*Attorneys for Yvette Weinstein, Trustee*

# EXHIBIT "1"

PIERCY BOWLER
TAYLOR & KERN

# **Kelly G. Parker**, CPA, Audit Principal



6100 Elton Avenue, Suite 1000, Las Vegas, Nevada 89107
Email: kparker@pbtk.com
Phone: 702-384-1120
Fax: 702-870-2474

**Kelly G. Parker** has been with the Firm since 1993 and is regarded as the firm's practice leader in audits of defined contribution pension plans such as 401(k) and profit sharing plans. He specializes in challenging and multi-entity engagements and the PBTK audit teams turn to him for technical advice and consulting on a daily basis - his door is always open to junior and seasoned auditors alike. In addition to providing audit and accounting services, he is closely involved in the related tax preparation for his clients and believes in a well-rounded team effort that will best benefit the client. He was made a Shareholder with the Firm in 2006.

Kelly has audited the Lionel Sawyer & Collins, Ltd. Profit Sharing Plan since the 2015 plan year.

**Industries**
Casino resorts, other gaming and wagering operations and allied business sectors, finance and leasing, equipment rental, vacation ownership, real estate development, general construction, residential construction, legal, defined contribution pension plans

**Services**
Public (SEC) and private company accounting and auditing, defined contribution pension plan auditing, internal control design and effectiveness testing

**Community Involvement**
Board of Directors, Treasurer – Leadership Academy of Nevada (Nevada Charter School); April 2013 – present

Committee to Form – Leadership Academy of Nevada; April 2012 – March 2013

Past President of the Western Pension & Benefits Conference – Las Vegas Chapter; past Treasurer of the BYU Management Society – Las Vegas, past Treasurer of Las Vegas Gem Club

**Education**
Master of Accountancy (Audit) and B.S. Accounting (Business Fundamentals Minor), Brigham Young University

**CPA certifications and permits**
Nevada, California, Indiana, Utah

**Memberships**
American Institute of Certified Public Accountants, Nevada Society of Certified Public Accountants

PIERCY BOWLER
TAYLOR & KERN

# **James W. Wilcox,** CPA, Tax Principal



6100 Elton Avenue, Suite 1000, Las Vegas, Nevada 89107
Email: JWilcox@pbtk.com
Phone: 702-384-1120
Fax: 702-870-2474

*Ask Jim about waterskiing, his grandchildren, 50-mile hikes over the continental divide, trying to maintain an edge over his wife's tennis game, or his love of cooking.*

**James W. Wilcox** is a Shareholder and a leader in the firm's tax practice. He specializes in tax planning and research for corporations and individuals and has lectured on all major federal tax reform legislation for the firm, its clients and other practitioners since 1984.

Jim has been the tax lead on the Lionel Sawyer & Collins account for the last 20 years and is most familiar with their structure and tax issues.

**Industries**
Real estate, timeshares, gaming, professional service corporations and individuals, foreign corporations, limited liability companies, and partnerships

**Services**
Tax preparation and planning, expert testimony, litigation support, representation before the IRS, reorganizations and liquidations, formation of partnerships and corporations and deal structuring

**Other Experience**
Board member and loan committee member for Cumorah Credit Union

**Education**
BS, Accounting - University of Utah BS
MS, Accounting – University of Nevada, Las Vegas

**CPA certifications and permits**
Nevada

**Other certifications, permits, awards, distinctions**
Former Chairman of the Liaison with Education Institutions Committee of the NSCPA,

**Memberships**
American Institute of Certified Public Accountants and the Nevada Society of Certified Public Accountants